**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING | : | |
| COMMISSION, | : | |
| Plaintiff, | : | CIVIL ACTION NO: |
| | : | |
| v. | : | COMPLAINT FOR PERMANENT |
| | : | INJUNCTION, CIVIL MONETARY |
| JODY DUPONT | : | PENALTIES, AND OTHER ANCILLARY |
| and | : | AND EQUITABLE RELIEF |
| OPEN RANGE TRADING LLC | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its

attorneys, alleges as follows:

## I.     SUMMARY

1.     Since at least March 2012 and continuing to the present (the "relevant period"),

Defendant Jody Dupont ("Dupont") and his company, Defendant Open Range Trading ("Open

Range") (collectively "Defendants"), have fraudulently solicited clients and prospective clients

to subscribe to a commodity futures day-trading system, called the Open Range Trading System

(the "system"), and other ancillary trading services that they marketed and sold to clients, who

receive buy and sell signals that instruct what commodity futures contracts to trade, when to

trade, and at what price.

2.     Defendants solicited clients to purchase the system through various means,

including a website, written solicitation materials and verbal communications, that falsely

claimed Dupont had been investing and trading futures for over twenty years, falsely claimed

that the system generated large profits with minimal risk, and failed to disclose that the reported

performance results were not based upon actual trading.

3.     Through this fraudulent marketing of their trading system, Defendants have engaged, are engaging, or are about to engage in acts and practices which violate the anti-fraud provisions of the Commodity Exchange Act ("Act"), including Sections 4b(a), 4*o*(1) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a), 6*o*(1) and 9(1) (2012) and Commission Regulations 4.41 and 180.1, 17 C.F.R. §§ 4.41 and 180.1 (2016).

4.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-l, to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations.  In addition, the Commission seeks disgorgement, civil monetary penalties, permanent trading and registration bans, and such other statutory, injunctive, or equitable relief as this Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

5.     Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

6.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act. 7 U.S.C. § 13a-1(e), because Defendants transact business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

### III.    PARTIES

7.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. § 1 *et seq*. (2012), and the Regulations thereunder, 17 C.F.R. § 1.1 *et seq*. (2016).

8.    Defendant **Jody Dupont** resides in South Carolina.  He is the founder and sole owner of Open Range Trading, and did business as Open Range Trading.  Dupont has never been registered with the Commission in any capacity.

9.    Defendant **Open Range Trading LLC** is a South Carolina company which uses as a business address 2004 Quail Ridge Road, Anderson, South Carolina 29625.  Open Range has never been registered with the Commission in any capacity.

### IV.    Statutory and Regulatory Background

#### A.    Fraud by a Commodity Trading Advisor

10.    Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2012), defines "commodity trading advisor" ("CTA"), in relevant part, as any person who: (A) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery; or (B) for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning the foregoing.

11.    Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), provides that it shall be unlawful for a CTA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly: (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or

course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

12.     Commission Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2016), provides, in relevant part, that no CTA, or any principal thereof, may advertise in a manner which: (A) employs any device, scheme or artifice to defraud any participant or client or prospective participant or client; or (B) involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

13.     Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b) (2016), provides that no person may present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a CTA, or any principal thereof, unless such performance is accompanied by the following statement:

> These results are based on simulated or hypothetical performance results that have certain inherent limitations.  Unlike the results shown in an actual performance record, these results do not represent actual trading.  Also, because these trades have not actually been executed, these results may have under-or over-compensated for the impact, if any, of certain market factors, such as lack of liquidity.  Simulated or hypothetical trading programs in general are also subject to the fact that they are designed with the benefit of hindsight.  No representation is being made that any account will or is likely to achieve profits or losses similar to these being shown.

**B.     Other Anti-Fraud Statutes and Regulations under the Act**

14.     Section 4b(a) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (2012), provides, in relevant part, that it shall be unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, to: (A) cheat or defraud or attempt to cheat or defraud the other person; or (B) willfully to deceive or attempt to deceive the other person by any means

whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract.

15.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate.

16.     Commission Rule 180.1, 17 C.F.R. § 180.1(a)(2016), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (A) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (B) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (C) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

## C.     Derivative Liability Under the Act

17.     Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), provides that any person who, directly or indirectly, controls any person who has violated any provision of the Act or any of the rules, regulations, or orders issued pursuant to the Act, may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person.

18.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012) and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2016) provide that the act, omission, or failure of any official,

agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his or her employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

## V.    <u>FACTS</u>

### A.    **Defendants' Trading System**

19.    Defendants represent that the Open Range Trading System generates specific trading signals to buy and sell futures contracts in various futures markets including, but not limited to, the E-mini S & P 500 Index, the Russell 2000 Index Mini, crude oil, soybeans and gold futures contracts.  The signals instruct clients what commodity futures to trade, when to trade (enter or exit), and at what price.

20.    Defendants solicit clients through various means, including a website at www.openrangetrading.com, You Tube and other social media.  In addition, Defendants publish a newsletter which has been sent to at least 175 clients and prospective clients.

21.    Prospective clients complete an online application on the Open Range website to subscribe to the system and receive the trading signals.  Clients make payments to Open Range's PayPal account through a drop down menu on the website which accepts payments by debit and credit cards and allows clients to transfer funds directly from their bank account to Open Range Trading's PayPal account.

22.    After clients purchase the system, they are given a password to Open Range's purported "Live Trading Room" where clients log in to receive the trading signals.

23.     Defendants charge clients anywhere from $250 per month to receive the basic trading signals up to $25,000 to receive the trading signals and other personalized trading advice. Defendants have received approximately $92,000 from Open Range clients.

**B.     Defendants' Fraud**

24.     Defendants make false and misleading misrepresentations of material fact, including but not limited to: (a) misrepresenting Dupont's futures trading experience; (b) misrepresenting the system's profit and loss performance; (c) falsely and misleadingly claiming that Defendants were engaging in actual trading when in fact they were not; and (d) falsely and misleadingly presenting reported performance results as real, rather than simulated or hypothetical.

25.     Defendants make these false and misleading misrepresentations of material fact on their website, in their newsletter and in social media sites available to the general public.

26.     Defendants falsely and misleadingly represent that Dupont has been investing and trading futures for over twenty years.  In fact, Dupont's futures trading experience before Open Range was limited to two accounts – both traded for less than a year and both traded at a loss.

27.     Defendants falsely and misleadingly represent to clients and prospective clients that their trading system generates large profits with minimal risk while trading just three contracts at a time.  For example, Defendants' website contains the following statements, which are untrue or materially misleading:

(a)     a "Gross Profit by Calendar Month" chart for each month for the time period January 2013 to January 2016 showing Open Range profits of between $700 to over $13,000 per month, with 30 of the 37 months shown as profitable;

(b)     a weekly report entitled "Live Trade Room Results" for the time period September 2014 to April 2016, showing Open Range weekly profits of between

7

$900 to over $3,000 per week, with approximately 90% of the 84 weeks as profitable; and

(c)    a chart entitled "2014 Total Win / Loss by Approach" showing that out of 564 Open Range trades, 424 were "wins," and 140 were "losses," resulting in a 75.18% winning rate.

28.    Additionally, Defendants' website is replete with statements such as the following, which are untrue or materially misleading:

(a)    "We have a proven track record of consistent profits";

(b)    "This week (April 13-17, 2015) we took 13 trades and had 12 wins with only 1 loss. [Traders] took $2,800 in gross profit!"; and

(c)    "Three years in a row we have produced consistent and profitable LIVE trade calls."

29.    Defendants made these false and misleading representations of material fact knowingly or recklessly because Open Range never had a futures account to make these purported profits and Dupont had only two futures accounts both of which he traded at a loss.

30.    Defendants falsely and misleadingly represent to clients and prospective clients that Defendants are conducting actual trading, when in fact they did not do any trading in a futures account since 2013. For example, Defendants' website contains the following:

(a)    "Our live trade room trades the e-mini, the Russell, oil, gold, soybeans and Euro";

(b)    "Currently trading E-mini S&P 500 index, Russell Index, Oil and Gold";

(c)    "Since all trade calls are made live and marked on a chart in real time, we have an accurate and instant record of our performance;

(d)    "Trade along with us with confidence";

(e)     "I [Dupont] reduce[d] my position as prescribed and now have most position sizes at or under 75% of full load"; and

(f)     "I [Dupont] plan to start adding some hedge protection and looking to time taking of profits off the top until I reduce position sizes closer to 50%."

31.     Defendants made these false and misleading representations of material fact knowingly or recklessly because Open Range never engaged in any live trading and Dupont had already stopped trading his one futures account in 2013.

32.     Defendants' falsely and misleadingly represented to clients and prospective clients that Defendants' hypothetical performance results were real, when in fact, they were not. For example, Defendants' website contains the following:

(a)     "[Dupont] takes weekly profit for 11th week in a row";

(b)     "Over the last three weeks we have 20 wins and just 4 losses with OVER $7,500 in gross profit *taken!*" *(emphasis supplied);* and

(c)     "At Open Range Trading we don't make excuses, we *tak*e profits month over month year over year." *(emphasis supplied).*

33.     Defendants made these false and misleading representations of material fact knowingly or recklessly because Open Range never engaged in any actual futures trading and Dupont never engaged in actual futures trading in which an account was profitable overall.

34.     In their solicitation materials, Defendants never included the hypothetical disclaimer required by Commission Regulation 4.41(b), which plainly states, "[t]he results are based on simulated or hypothetical performance results that have certain inherent limitations."

### C.    Controlling Person

37.    Dupont formed Open Range, developed the trading system, created all of open Range's solicitation materials, and gave entry and exit trades to clients who logged into the "Live Trade Room."

## VI.

### VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### Count I

### Violation of Section 4b(a)(1)(A) and (C) of the Act: Fraud by Making False Misrepresentations and Omissions

38.    Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39.    Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C), make it unlawful for any person to (A) to cheat or defraud or attempt to cheat or defraud another person, or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in in or in connection with any order to make, or the making of, any futures contract that is made or to be made on or subject to the rules of a designated contract market, for on behalf of any other person.

40.    As set forth above, during the relevant period, Defendants cheated, defrauded or willfully deceived, and attempted to cheat, defraud or willfully deceive Open Range clients and prospective clients by, among other things, knowingly or recklessly making false or misleading representations of material fact or omitting material facts, including but not limited to, misrepresenting profits and losses, misleadingly claiming that Defendants were engaging in live trading when in fact they were not trading in any futures account, and falsely presenting reported trading results as real, rather than simulated or hypothetical.

41. Dupont controlled Open Range and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Open Range's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Dupont is thereby liable for Open Range's violations of Section 4b(a)(1)(A) and (C), 7 U.S.C. Section 6b(a)(1)(A) and (C).

42. The foregoing acts, misrepresentations, omissions, and failures of Dupont described in this Count occurred within the scope of his employment with Open Range. Therefore, Open Range is liable for Dupont's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

43. Each fraudulent or deceptive act and each misrepresentation or omission of a material fact made during all relevant times, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C).

**Count II**

**Violations of Section 4*o*(1)(A) and (B) of the Act:**
**Fraud by a Commodity Trading Advisor**

44. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

45. Defendants, through the sale of their trading system, for compensation or profit, have engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery, or, for compensation or profit, and as part of a regular business, issued or promulgated analyses or reports concerning the advisability of trading in any contract of sale of a commodity for future delivery. As such, Defendants each acted as CTAs within the meaning of Section 1a(12) of the Act. 7 U.S.C. § 1a(12).

46.     During the relevant period, Defendants, while acting as CTAs, through use of the mails or other means or instrumentalities of interstate commerce such as the internet, electronic mail and electronic trading, have employed a device, scheme or artifice to defraud their clients and prospective clients and engage in a transaction, practice or course of business which operates as a fraud upon its clients and prospective clients by, among other things misrepresenting profits and losses, misleadingly claiming that Defendants were engaging in live trading when in fact they were not trading in any futures account, and falsely presenting reported trading results as real, rather than simulated or hypothetical.

47.     Dupont controlled Open Range and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Open Range's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Dupont is thereby liable for Open Range's violations of Section 4$o$(1)(A) and (B), 7 U.S.C. § 6$o$(1)(A) and (B).

48.     The foregoing acts, misrepresentations, omissions, and failures of Dupont described in this Count occurred within the scope of his employment with Open Range. Therefore, Open Range is liable for Dupont's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

49.     Each fraudulent or deceptive act and each misrepresentation or omission of a material fact, made during the relevant time period, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B).

**Count III**

**Violations of Commission Section 6(c)(1) of the Act and Regulation 180.1:**
**Fraud**

50.     Paragraphs 1 through 37 are realleged and incorporated herein by reference.

51.     Section 6(c) of the Act; 7 U.S.C. § 9(1) (2012), makes it unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly: (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would have operated as a fraud or deceit upon customers or prospective customers.

52.     Commission Regulation 180.1, 17 C.F.R. § 180.1 (2016), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (A) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (B) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (C) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

53.     Defendants, directly or indirectly, in connection with contracts of sale of commodities in interstate commerce, contracts for future delivery on or subject to the rules of a

registered entity, intentionally or recklessly: (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would have operated as a fraud or deceit upon customers or prospective customers.

54.     Dupont controlled Open Range and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Open Range's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Dupont is thereby liable for Open Range's violations of Section 4$o$(1)(A) and (B), 7 U.S.C. § 6$o$(1)(A) and (B).

55.     The foregoing acts, misrepresentations, omissions, and failures of Dupont described in this Count occurred within the scope of his employment with Open Range. Therefore, Open Range is liable for Dupont's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

56.     Each fraudulent or deceptive act and each misrepresentation or omission of a material fact, made during the relevant time period, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B).

### Count IV

### Violations of Commission Regulation 4.41(a):
### False Advertising

57.     Paragraphs 1 through 37 are realleged and incorporated herein by reference.

58.     Commission Regulation 4.41(a), 17 C.F.R § 4.41(a), prohibits CTAs from advertising in manner which employs any device, scheme or artifice to defraud any participant or

client or prospective participant or client or involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or prospective participant or client.

59.    During the relevant period, Defendants advertised the Open Range Trading system on Open Range's website, newsletter, social media sites, among other places, to solicit clients in a manner that employed a device, scheme or artifice to defraud clients and prospective clients and engaged in a transaction, practice or course of business which operated as a fraud upon their clients and prospective clients by, among other things, misrepresenting the Open Range system's profits and losses, misleadingly claiming that Defendants were engaging in live trading when in fact they were not trading in any futures account, and falsely presenting reported trading results as real, rather than simulated or hypothetical.

60.    Dupont controlled Open Range and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Open Range's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Dupont is thereby liable for Open Range's violations of Commission Regulation 4.41(a), 17 C.F.R § 4.41(a).

61.    The foregoing acts, misrepresentations, omissions, and failures of Dupont described in this Count occurred within the scope of his employment with Open Range. Therefore, Open Range is liable for Dupont's acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

62.    Each false or misleading advertisement of the Open Range Trading System, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 4.41(a), 17 C.F.R § 4.41(a).

**Count V**

**Violations of Commission Regulation 4.41(b):**
**Failure to Include Hypothetical Disclaimer**

63.     Paragraphs 1 through 37 are realleged and incorporated herein by reference.

64.     Commission Regulation 4.41(b), 17 C.F.R § 4.41(b), prohibits any person from presenting the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest, or series of transactions in a commodity interest of a CTA, or any principal thereof unless such performance is accompanied the hypothetical disclaimer contained in Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

65.     Defendants violated Commission Regulation 4.41(b) by presenting the performance of Open Range's reported trading results in solicitation material, including but not limited to Open Range's website, newsletter, and social media sites, without the disclaimer required by Commission Regulation 4.41(b) that the performance was based upon simulated or hypothetical trading results.

66.     Dupont controlled Open Range and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Open Range's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Dupont is thereby liable for Open Range's violations of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

67.     The foregoing acts, misrepresentations, omissions, and failures of Dupont described in this Count occurred within the scope of his employment with Open Range. Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, Open Range is liable for Dupont's violations of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

68. Each failure of Defendants to present performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest, or series of transactions in a commodity interest of a CTA or principal thereof without the hypothetical disclaimer contained in Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b), including but not limited to, those dates specifically alleged herein, is alleged as a separate and distinct violation of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

## VII.    RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A. An order finding that Defendants violated Sections of 4b(a)(l )(A) and (C), 4*o*(l)(A) and (B), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C), 6*o*(1)(A) and (B), and 9(1), and Commission Regulations 4.41(a) and (b) and 180.1, 17 C.F.R. §§ 4.41 (a) and (b) and 180.1;

B. An order of permanent injunction prohibiting Defendants and any other person or entity associated with them, from engaging in conduct that violates Sections 4b(a)(l)(A) and (C), 4*o*(l)(A) and (B) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C), 6*o*(1)(A) and (B), and 9(1), and Commission Regulations 4.41 (a) and (b) and 180.1, 17 C.F.R. §§ 4.41 (a) and (b) and 180.1;

C. An order of permanent injunction prohibiting Defendants and any successor thereof, from, directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a (40) of the Act, 7 U.S.C. § 1a(40) (2012);

    b.      entering into any transactions involving commodity interests (as that term is defined in Regulation 1.3 (yy), 17 C.F.R. § 1.3(yy) (2015);

    c.      having any commodity interests traded on their behalf;

    d.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.      soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

    g.      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9).

E.      An order requiring that Defendants, as well as any of their successors, disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act, as amended, and the Regulations, including pre and post-judgment interest;

F.      An order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity whose funds Defendants received, or caused another person or entity to receive, as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations; and

G.     An order requiring Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of: (1) triple their monetary gain or (2) $152,243 for each violation of Counts I, II, IV and V and not more than the greater of (1) triple their monetary gain or (2) $1,098,190 for each violation of Count III;

H.     An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

I.     An order providing such other and further relief as this Court may deem necessary and appropriate.

Dated: <u>September 29, 2016</u>                    Respectfully submitted,

BETH DRAKE
Acting United States Attorney
District of South Carolina


<u>s/ James C. Leventis, Jr.</u>
James C. Leventis, Jr. (#9406)
Assistant United States Attorney
United States Attorney's Office
1441 Main Street, Suite 500
Columbia, SC  29201
Ph:  803.929.3000
James.leventis@usdoj.gov

U.S. COMMODITY FUTURES
TRADING COMMISSION
525 West Monroe Street, Suite 1100
Chicago, IL 60661

Camille M. Arnold
Senior Trial Attorney
(312) 596-0524
(312) 596-0714 (facsimile)
carnold@cftc.gov

David Terrell
Chief Trial Attorney
(312) 596-0546
(312) 596-0714 (facsimile)
dterrell@cftc.gov

Scott Williamson
Deputy Regional Counsel
(312) 596- 0560
(312) 596-0714 (facsimile)
swilliamson@cftc.gov

Rosemary Hollinger
Regional Counsel
(312) 596-0560
(312) 596-0714 (facsimile)
rhollinger@cftc.gov